## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DISCOUNT DRUGS OF ILLINOIS INC., an Illinois Corporation, individually and as the representative of a class of similarly-situated persons, ) ) ) ) ) | |
| Plaintiff, ) ) | Case No. 17-cv-1298 |
| v. ) ) | CLASS ACTION |
| HEWLETT PACKARD ENTERPRISE COMPANY, and JOHN DOES 1-12, ) ) ) ) | |
| Defendants. ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Discount Drugs of Illinois Inc. ("Discount Drugs" or "Plaintiff"), brings this action on behalf of itself and all other persons similarly situated and, except for those allegations pertaining to Plaintiff or its attorneys, which are based upon personal knowledge, alleges the following upon information and belief against defendant Hewlett Packard Enterprise Company ("HP"), and John Does 1-12 (collectively "Defendants"):

## PRELIMINARY STATEMENT

1.      Defendants have sent advertisements to facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227,

and the regulations the Federal Communications Commission ("FCC") has prescribed thereunder, 47 C.F.R. § 64.1200 (collectively, the "TCPA").

2. Defendants sent more than three advertisements to Plaintiff's facsimile machine in violation of the TCPA. Group Exhibit A. Each fax in Exhibit A lacks any opt-out notice on its first page.

3. Plaintiff brings this action on behalf of itself and a class of all similarly-situated persons, and against Defendants, seeking statutory damages for each violation of the TCPA, trebling of the statutory damages, injunctive relief, compensation and attorney fees (under the conversion count), and all other relief the Court deems appropriate under the circumstances.

4. Unsolicited faxes cause damage to their recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. Unsolicited faxes tie up the telephone lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message. Moreover, a junk fax interrupts the recipient's

privacy. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else.

5. The TCPA prohibits the use of "any telephone facsimile machine, computer or other device to send, to a facsimile machine, an unsolicited advertisement…." 47 U.S.C. § 227 (b)(1)(C). The TCPA defines an "unsolicited advertisement" as "**any** material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission…." *Id.*, § 227 (a)(5) (emphasis added).

6. Each of the documents Plaintiff received advertises HP Web Services. Exhibit A.

7. The documents also advertise "HP's free ePrint services," which provides people with "an easy way to print from email, anywhere and anytime." Exhibit A.

8. The documents also advertise the HP ePrintCenter Web Site, which a person can use "to set up increased security for ePrint, specify the e-mail addresses that are allowed to send e-mail to your printer, get Print Apps (if available for your product), and access other free services." Exhibit A.

9.     Defendants' ads promote the benefits of HP's ePrint services by informing recipients that the service "transforms email and attachments to a print-only format to reduce the threat of a virus or other harmful content." Exhibit A.

10.     Defendants' ads direct the recipient to go to the HP ePrintCenter Web site—www.hpePrintCenter.com—for more information and specific terms and conditions. Exhibit A.

## PARTIES, JURISDICTION, AND VENUE

11.     Plaintiff is an Illinois corporation with its principal place of business in Cook County, Illinois.

12.     On information and belief, defendant Hewlett Packard Enterprise Company is a Delaware corporation with its principal place of business in Palo Alto, California.

13.     John Doe Defendants 1-12 are persons yet unknown to Plaintiff that actively participated in the transmission of fax advertisements to the class, benefitted from those transmissions, or on whose behalf the transmissions occurred.

14.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

15.     Specific personal jurisdiction exists over Hewlett Packard Enterprise Company in Illinois because it has transacted business and committed tortious acts within the State.

16.     General personal jurisdiction exists over Hewlett Packard Enterprise Company in Illinois because it markets and offers its HP Web Services within the State.

17.     Venue is proper in the Northern District of Illinois because Defendants committed statutory torts within this District and a significant portion of the events took place here.

## FACTS

18.     HP is a company that provides a wide range of technological and business services all over the world. One of their products is a Web Service that facilitates e-printing to HP web-enabled printers.

19.     Defendants sent advertisements to the facsimile machines of Plaintiff and a class of similarly-situated persons. Whether Defendants did so directly or with the assistance of a third party (yet unknown to Plaintiff), Defendants are directly liable for violating the TCPA.

20.     During the period from September 4, 2016 through September 6, 2016, Plaintiff received at least three of Defendants'

advertisements by facsimile. A true and correct copy of the September 2016 faxes are attached as <u>Group Exhibit A</u>. Plaintiff has received many more and intends to discover the number of other Defendants' advertisements sent to Plaintiff's fax machine.

21.    Each page of <u>Exhibit A</u> is one-page document Defendants sent to Plaintiff's facsimile machine advertising Defendants' HP Web Services, which include HP's ePrint Services.

22.    The faxes advertise the commercial availability and quality of HP's goods and products by promoting the benefits and uses of HP's ePrintCenter and HP's Web Services. <u>Exhibit A</u>.

23.    Each page of <u>Exhibit A</u> prominently includes HP's name.

24.    If one goes to the hyperlink on Defendants' fax as instructed— www.hpePrintCenter.com—one sees an option to create an account with HP, as well as an advertisement for HP's "Connected Services," including "Instant Ink" advertised at "$2.99 per month." <u>Exhibit B</u>.

25.    If a fax recipient chooses the option "Create your account," HP requests the recipient's e-mail, full name, and the ability to send the recipient e-mails "with HP Connected news, offers, and updates."

Exhibit C.

26.    On HP's Create an HP Connected Account page, HP provides links to the HP Inc. Privacy Statement, Exhibit D.

27.    None of the documents attached as Exhibit A includes the mandatory opt-out notice required by the TCPA. *See* 47 U.S.C. § 227 (b) (2) (D) & (E) and 47 C.F.R. § 64.1200 (a) (4) (iii) & (v). Exhibit A provides no information advising the recipient how to stop receiving Defendants' advertisements. *Id*.

28.    To learn how to opt out of receiving Defendants' advertisements promoting HP products and services, one must go to Paragraph 6 of the Privacy Statement. Exhibit D. There, one learns that he or she must create an HP Passport account to manage communications or write to the HP Privacy Office. Exhibit D, ¶ 6 HP general communications.

29.    Plaintiff did not expressly invite or give permission to anyone to send Exhibit A or any other HP advertisement to Plaintiff's fax machine. Even if Plaintiff had done so, however, the lack of an opt-out notice on Defendants' fax makes consent irrelevant.

30.    On information and belief, Defendants sent advertisements

to the facsimile machines of Plaintiff and more than 39 other persons in violation of the TCPA.

31. Plaintiff and the other class members owe no obligation to protect their fax machines from Defendants. Their fax machines are ready to send and receive their urgent communications, or private communications about patients' medical needs, not to receive Defendants' unlawful advertisements.

## CLASS ACTION ALLEGATIONS

32. Plaintiff brings this action as a class action on behalf of itself and all others similarly situated as members of a class, initially defined as follows:

> Each person that was sent one or more facsimiles on or after February 20, 2013, promoting HP Web Services or the HP ePrint Service that did not state on its first page that the fax recipient may request that the sender not send any future fax and that the failure to comply with such a request within 30 days would be unlawful.

Plaintiff expressly reserves the right to modify the proposed class definition or propose subclasses.

33. Excluded from the class are Defendants, any entity in which Defendants have a controlling interest, each of Defendants' officers, directors, legal representatives, heirs, successors, and assigns, and any

Judge assigned to this action, including his or her immediate family.

34. On information and belief, Defendants' fax advertising campaigns involved other, substantially-similar advertisements also sent without the opt-out notice required by the TCPA. Plaintiff intends to locate those advertisements in discovery. Exhibit E, a Demand for Preservation of All Tangible Documents Including Electronically Stored Information.

35. This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies Rule 23 (a)'s numerosity, commonality, typicality, and adequacy requirements. Additionally, prosecution of Plaintiff's claims separately from the putative class's claims would create a risk of inconsistent or varying adjudications under Rule 23 (b) (1) (A). Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

36. **Numerosity/impracticality of joinder.** On information and belief, the class consists of more than 39 persons and, thus, is so numerous that individual joinder of each member is impracticable. The

documents Plaintiff received (<u>Exhibit A</u>) are standardized forms. Plaintiff does not know the precise number of class members and their identities, but will obtain such information from Defendants' records or the records of third parties.

37. **<u>Commonality and predominance.</u>** There is a well-defined community of interest and common questions of law and fact that predominate over any questions affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

a.    Whether Defendants sent documents promoting the commercial availability or quality of property, goods, or services to facsimile machines;

b.    Whether the faxes contained in <u>Exhibit A</u>, as well as other yet-to-be-discovered facsimiles sent by or on behalf of Defendants, advertised the commercial availability or quality of property, goods or services;

c.    The manner and method Defendants used to compile or

obtain the list(s) of fax numbers to which they sent the faxes contained in <u>Exhibit A</u> and other fax advertisements;

      d.    Whether Defendants' advertisements contained opt-out notices as required by the TCPA;

      e.    Whether the Court should award Plaintiff and the other class members statutory damages;

      f.    Whether, if the Court finds that Defendant(s) willfully or knowingly violated the TCPA, the Court should exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than three times the amount;

      g.    Whether the Court should enjoin Defendants from sending advertisements to facsimile machines in the future; and

      h.    Whether Defendants' conduct as alleged herein constituted conversion.

38.    **Typicality of claims.** Plaintiff's claims are typical of the claims of the other class members, because Plaintiff and all class members were injured by the same wrongful practices. Plaintiff and the members of the class received Defendants' advertisements by facsimile and those advertisements did not contain the opt-out notice required by

the TCPA. Under the facts of this case, because the focus is upon Defendants' conduct, if Plaintiff prevails on its claims, then the other putative class members will prevail as well.

39. **Adequacy of representation.** Plaintiff is an adequate representative of the class because its interests do not conflict with the interests of the class it seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and TCPA litigation in particular, and Plaintiff intends to vigorously prosecute this action. Plaintiff and its counsel will fairly and adequately protect the interest of members of the class.

40. **Prosecution of separate claims would yield inconsistent results.** Even though the questions of fact and law in this action are predominantly common to Plaintiff and the putative class members, separate adjudication of each class member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create incompatible standards for Defendants to operate under if/when class members bring additional lawsuits concerning the same unsolicited fax advertisements or if Defendants choose to advertise to fax machines again in the future.

41. **A class action is the superior method of adjudicating the common questions of law or fact that predominate over individual questions.** A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

## COUNT I
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

42. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

43. Plaintiff brings Count I on behalf of itself and a class of similarly situated persons against Defendants.

44. The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine…." 47 U.S.C. § 227 (b) (1).

45. The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any

property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227 (a) (4).

46.     Defendants used a telephone facsimile machines, computer or other device to send <u>Exhibit A</u> to Plaintiff and other putative class members, advertising Defendants' HP Web Services, including HP's ePrint Services,

47.     Each document in <u>Exhibit A</u> prominently includes HP's name.

48.     If one goes to the hyperlink on Defendants' fax as instructed— www.hpePrintCenter.com—one sees an option to create an account with HP, as well as an advertisement for HP's "Connected Services," including "Instant Ink" advertised at "$2.99 per month." <u>Exhibit B</u>.

49.     When a recipient chooses the option "Create your account," HP requests the recipient's e-mail, full name, and the ability to send the recipient e-mails "with HP Connected news, offers, and updates." <u>Exhibit C</u>.

50.     The TCPA provides a private right of action as follows:

       3.     <u>Private right of action</u>. A person may, if otherwise permitted by the laws or rules of

court of a state, bring in an appropriate court of that state:

> (A)    An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

> (B)    An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

> (C)    Both such actions.

47 U.S.C. § 227 (b) (3).

51.    The Court, in its discretion, may treble the statutory damages if it determines that a violation was knowing or willful. 47 U.S.C. § 227 (b) (3).

52.    Here, Defendants violated 47 U.S.C. § 227 (b) (1) (C) by sending advertisements (such as those in Exhibit A) to the facsimile machines of Plaintiff and the other class members without their prior express invitation or permission.

53.    The TCPA requires that every fax advertisement must include an opt-out notice clearly and conspicuously displayed on the bottom of its first page. 47 U.S.C. § 227 (b) (2) (D) and (E); 47 C.F.R. § 64.1200 (a) (4).

54.     Defendants failed to include a clear and conspicuous opt-out notice on any document in Exhibit A.

55.     The TCPA expressly mandates the form and content of an opt-out notice. 47 U.S.C. § 227 (b) (2) (D) & (E), in relevant part, states:

In implementing the requirements of this subsection, the Commission ...

(D) shall provide that a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if...

(i) the notice is clear and conspicuous and on the first page of the unsolicited advertisement;

(ii) the notice states that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a request meeting the requirements under subparagraph (E) is unlawful;

(iii) the notice sets forth the requirements for a request under subparagraph (E);

(iv) the notice includes—

        (I) a domestic contact telephone and facsimile machine number for the recipient to transmit such a request to the    sender; and

        (II) a cost-free mechanism for a recipient to transmit a request pursuant to such notice to the sender of the unsolicited advertisement; the Commission shall by rule require      the sender to provide such a mechanism

and may, in the discretion of the Commission and subject to such conditions as the Commission may prescribe, exempt certain classes of small business senders, but only if the Commission determines that the costs to such class are unduly burdensome given the revenues generated by such small businesses;

(v) the telephone and facsimile machine numbers and the cost-free mechanism set forth pursuant to clause (iv) permit an individual or business to make such a request at any time on any day of the week; and

(vi) the notice complies with the requirements of subsection (d) of this section;

(E) shall provide, by rule, that a request not to send future unsolicited advertisements to a telephone facsimile machine complies with the requirements under this subparagraph only if—

(i) the request identifies the telephone number or numbers of the telephone facsimile machine or machines to which the request relates;

(ii) the request is made to the telephone or facsimile number of the sender of such an unsolicited advertisement provided pursuant to subparagraph (D)(iv) or by any other method of communication as determined by the Commission; and

(iii) the person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone facsimile machine;

56. The FCC's regulations at 47 C.F.R. § 64.1200 (a) (4) (iii) &

(v) expressly require the following:

(iii) The advertisement contains a notice that informs the recipient of the ability and means to avoid future unsolicited advertisements. A notice contained in an advertisement complies with the requirements under this paragraph only if -

(A) The notice is clear and conspicuous and on the first page of the advertisement;

(B) The notice states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under paragraph (a)(4)(v) of this section is unlawful;

(C) The notice sets forth the requirements for an opt-out request under paragraph (a)(4)(v) of this section;

(D) The notice includes -

(1) A domestic contact telephone number and facsimile machine number for the recipient to transmit such a request to the sender; and

(2) If neither the required telephone number nor facsimile machine number is a toll-free number, a separate cost-free mechanism including a Web site address or email address, for a recipient to transmit a request pursuant to such notice to the sender of the advertisement. A local telephone number also shall constitute a cost-free mechanism so long as recipients are local and will not incur any long distance or other separate charges for calls made to such number; and

(E) The telephone and facsimile numbers and cost-free mechanism identified in the notice must permit an

individual or business to make an opt-out request 24 hours a day, 7 days a week.

...

(v) A request not to send future unsolicited advertisements to a telephone facsimile machine complies with the requirements under this subparagraph only if -

    (A) The request identifies the telephone number or numbers of the telephone facsimile machine or machines to which the request relates;

    (B) The request is made to the telephone number, facsimile number, Web site address or email address identified in the sender's facsimile advertisement; and

    (C) The person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone facsimile machine.

57.    The documents attached as <u>Exhibit A</u> do not provide any of the information the TCPA requires for a compliant opt-out notice.

58.    Facsimile advertising imposes burdens on recipients that are distinct from the burdens imposed by other types of advertising. The required opt-out notice provides recipients the necessary information to opt-out of receiving future faxes, including a notice that the sender's failure to comply with the opt-out request will be unlawful. 47 C.F.R. § 64.1200 (a) (4).

59.    Defendants failed to include any kind of compliant opt-out

notice language on any document in <u>Exhibit A</u>. For example, the documents in <u>Exhibit A</u> fail to state on the first page that the recipient may make a request to the sender not to send any future advertisement to the recipient's facsimile machines, and that the sender's failure to comply within 30 days is unlawful. Defendants also failed to include a toll-free telephone number and did not indicate that Plaintiff or the class members could use that telephone number to request that Defendants stop sending advertisements to the recipient's fax machine.

60.   Defendants' failure to include an opt-out notice on the advertisements they sent Plaintiff's fax machine makes irrelevant any express consent or established business relationship ("EBR") that otherwise might have justified Defendants' fax advertising. 47 C.F.R. § 64.1200 (a) (4).

61.   The TCPA is a strict liability statute and Defendants are liable to Plaintiff and the other class members even if their actions were negligent. 47 U.S.C. § 227 (b) (3).

62.   Even if Defendants did not intend to injure Plaintiff and the other class members, did not intend to violate their privacy, and did not intend to waste their valuable time with Defendants' advertisements,

those facts are irrelevant because the TCPA is a strict liability statute.

63.    If Defendants' actions were knowing or purposeful, then the Court has the discretion to increase the statutory damages up to three times the amount. 47 U.S.C. § 227 (b) (3).

64.    HP is liable for the fax advertisements at issue because it sent them, caused them to be sent, participated in the activity giving rise to or constituting the violation, the faxes were sent on its behalf, or under general principles of vicarious liability, including actual authority, apparent authority and ratification.

65.    HP benefitted from the sending of the ads because they increased awareness of HP's Web Services and HP's ePrintCenter.

66.    HP benefitted from the sending of the ads because the owners of HP fax machines must use HP ink or toner in those devices, increasing HP's ink or toner sales.

67.    HP benefitted from the sending of the ads because HP allows third parties to purchase space on select e-print content for promotion and information like coupons or local services.

68.    Defendants knew or should have known that Plaintiff and the other class members had not given express invitation or permission

for Defendants or anybody else to send advertisements to their fax machines about Defendants' goods, products, or services, that Plaintiff and the other class members did not have an established business relationship with Defendants, that the documents in Exhibit A are advertisements, and that the documents in Exhibit A do not display a compliant opt-out notice as required by the TCPA.

69. Defendants' actions damaged Plaintiff and the other class members. Receiving Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendants' faxes. Defendants' ads were printed on Plaintiff's specialized paper. Moreover, the subject faxes used the fax machines of Plaintiff and the other class members. The subject faxes cost Plaintiff time, as Plaintiff and its employees wasted their time receiving, reviewing and routing Defendants' illegal faxes. That time otherwise would have been spent on Plaintiff's business activities. Defendants' faxes unlawfully interrupted Plaintiff and the other class members' privacy interests in being left alone. Finally, the injury and property damage sustained by Plaintiff and the other class members from the sending of unlawful fax advertisements occurred outside Defendants' premises.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, jointly and severally, as follows:

A.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.    That the Court award $500.00 in statutory damages for each violation of the TCPA;

C.    That, if it finds Defendant(s) willfully or knowingly violated the TCPA's faxing prohibitions, the Court exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than three times the amount (Plaintiff requests trebling);

D.    That the Court enter an injunction prohibiting Defendants from violating the TCPA; and

E.    That the Court award costs and such further relief as the Court may deem just and proper.

## COUNT II
## COMMON LAW CONVERSION

70.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

71.    Plaintiff brings Count II on behalf of itself and a class of similarly situated persons and against Defendant.

72.    By sending advertisements to their fax machines, Defendants improperly and unlawfully converted the class's fax machines to Defendants' use. Where printed (as in Plaintiff's case), Defendants also improperly and unlawfully converted the class members' paper and toner to Defendants' own use. Defendants also converted Plaintiff's time to Defendants' own use, as they did with the valuable time of the other class members.

73.    Immediately prior to their receipt of Defendants' unsolicited advertisements on their facsimile machines, Plaintiff and the other class members each owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

74.    By sending them unsolicited faxes, Defendants permanently misappropriated the class members' fax machines, toner, paper, and employee time to their own use. Such misappropriation was wrongful

and without authorization.

75.    Defendants knew or should have known that the misappropriation of paper, toner, and employee time was wrongful and without authorization.

76.    Plaintiff and the other class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a result of their receipt of unsolicited fax advertisements from Defendants.

77.    Defendants' unsolicited faxes effectively stole Plaintiff's employees' time because persons employed by Plaintiff were involved in receiving, routing, and reviewing Defendants' illegal faxes. Defendants knew or should have known employees' time is valuable to Plaintiff.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, jointly and severally, as follows:

A.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for

the class;

B.    That the Court award appropriate damages;

C.    That the Court award punitive damages;

D.    That the Court award attorney's fees;

E.    That the Court award costs of suit; and

F.    That the Court award such further relief as it may deem just

and proper under the circumstances.

Respectfully submitted,

DISCOUNT DRUGS OF ILLINOIS
INC., an Illinois Corporation,
individually and as the representative
of a class of similarly-situated persons,

By: /s/ Phillip A. Bock

Phillip A. Bock
Tod A. Lewis
David. M. Oppenheim
Bock, Hatch, Lewis & Oppenheim,
LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: 312-658-5500
Facsimile: 312-658-5555